**KRISS & FEUERSTEIN LLP**
360 Lexington Avenue, Suite 1200
New York, New York 10017
(212) 661-2900
Jerold C. Feuerstein, Esq.
Jason S. Leibowitz, Esq.
jfeuerstein@kandfllp.com
jleibowitz@kandfllp.com

*Attorneys for Eastern Savings Bank, fsb*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| Rogan RR LLC, | Case No. 7:13-23532-rdd |
| | Hon. Robert D. Drain<br>United States Bankruptcy Judge |
| Debtor. | |

-----------------------------------------------------------x

**APPLICATION OF EASTERN SAVINGS BANK, FSB FOR THE ENTRY OF AN ORDER PURSUANT TO FEDERAL RULES OF BANKRUPTCY PROCEDURE 2004 & 9016 DIRECTING THE PRODUCTION OF DOCUMENTS AND ORAL DEPOSITIONS**

Eastern Savings Bank, fsb ("Eastern") a secured creditor of Rogan RR LLC (the "Debtor"), by and through its counsel, Kriss & Feuerstein LLP, respectfully submits this application (the "Application") for the entry of an Order, pursuant to Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing and directing the examination of the Debtor, and its tenants, including without limitation, Railroad Transfer, Inc. ("RTI") and Primem Tristate, LLC ("PTL") and Quality Materials ("Quality" and together with RTI and PTL, the "Tenants"), under oath, and the production and turnover of certain records and documents that are in the Debtor's possession, custody or control. In support thereof, Eastern respectfully sets forth and represents as follows:

**PRELIMINARY STATEMENT**

1. As the Court is well aware, since the time this case was filed more than five-hundred and fifty days ago on September 13, 2013 (the "Petition Date"), Eastern has been attempting (but

unable) to gather answers to very basic questions about the Debtor and its operations at the Property.

2.    Nevertheless, Eastern's requests for information have repeatedly been ignored by the Debtor.

3.    Some of the inquiries repeatedly posed to the Debtor by Eastern seek information pertaining to the Debtor's monthly budget, so that a cash collateral agreement (which has been contemplated with the Debtor's former counsel since November 2013 and current counsel) may be finalized and completed.

4.    In addition, Eastern has repeatedly inquired as to the nature of the relationship between the Debtor and RTI and PTL and Quality, all three of whom either are, or were tenants at the Property. In addition, Eastern has been attempting to better understand how exactly the Debtor's real property is being used and operated on a daily basis.

5.    Notwithstanding the fact that this Court entered an Order permitting the Debtor to retain Kurtzman Matera, P.C., ("Matera") instead of Penachio & Malara LLP ("Penachio"), on February 23, 2015 [ECF No. 81], Eastern's requests for information continue to go ignored by the Debtor.

6.    As a result, Eastern hereby seeks the entry of an Order pursuant to Rules 2004 and 9016 of the Bankruptcy Rules, authorizing and directing the examination of the Debtor and its tenants, under oath, and the production and turnover of certain records and documents that are in the Debtor's possession, custody or control.

## JURISDICTION AND STATUTORY PREDICATES

7.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

8. The statutory predicates for the relief requested herein are § 105(a) of the Bankruptcy Code and Bankruptcy Rules 2004 and 9016.

## BACKGROUND

**The Loan**

9. On or about November 14, 2003, Eastern made a loan (the "Loan") to DD&S, LLC ("DD&S"), encumbering the real property commonly known as 225 Railroad Avenue, Bedford Hills, New York (the "Property") in the principal sum of $800,000.00 as evidenced by a Consolidated Secured Promissory Note (the "Note") which was duly executed by DD&S and Hoboken, LLC ("Hoboken") and delivered to Eastern. A copy of the Note is annexed hereto as **Exhibit "A"**

10. As security for the Note, on November 14, 2003 DD&S duly executed and delivered that certain Mortgage, Consolidation and Extension Agreement, Assignment of Lease and Rents, and Security Agreement (the "Mortgage"). A copy of the duly executed Mortgage is annexed hereto as **Exhibit "B"**.

11. To further secure the indebtedness evidenced by the Note, DD&S's Manager, Joseph Savino ("Savino") duly executed and delivered a personal Guarantee (the "Guarantee") dated November 14, 2003 in favor of Eastern.

**The Debtor's Connection with the Property**

12. Without Eastern's knowledge or permission, DD&S conveyed the Property to the Debtor by deed dated July 7, 2005 (the "Deed"), which conveyance was explicitly subject to the Mortgage.

13. Despite the conveyance of the Property to the Debtor, monthly debt service payments under the Note and Mortgage continued.

**The Default**

14. The when the monthly debt service payment due on October 1, 2010, and all subsequent such payments, were not remitted to Eastern (the "Default").

**The Chapter 11 Filing**

15. The Debtor filed its petition (the "Petition") for Chapter 11 bankruptcy relief on September 13, 2013.

16. In connection with this matter, the Debtor through the monthly operating reports it has filed, appears to have entered into leases with a RTI and PTL (since May 1, 2014). Certain operating reports filed by the Debtor further indicate that Quality previously was a tenant at the Property, but that it left the Property in June 2014. At no point during this case has the Debtor sought Court approval of any leases with any tenants.

17. Curiously, certain operating reports filed by the Debtor indicate that RTI will increase the amount of rent it pays (if needed) on 7/1/14 to cover adequate protection payments to Eastern.

18. Notably, at the hearing held on March 19, 2014, Paul Simon ("Simon") appeared on behalf of the Debtor, and indicated that he is the comptroller of the operating company that occupies the Property. It is unclear which company he was referring exactly and there has been no further clarification on the matter.

4

**The Single Asset Real Estate Designation**

19. By *Stipulation and Order Designating the Debtor Single Asset Real Estate Pursuant to 11 U.S.C. § 101(51B)* (the "SARE Order"), the Debtor was designated Single Asset Real Estate, which Order was entered by this Court on December 5, 2013 [docket item 19].

20. Pursuant to the designation, the Debtor was required to either file a plan of reorganization that had a reasonable possibility of being confirmed within a reasonable time between the date the Order was entered and January 4, 2014, or commence making payments to Eastern by January 4, 2014.

21. The Debtor failed to take certain actions required of it in connection with the SARE Order.

**Motions for Relief**

22. When the Debtor failed to take certain actions required of it in connection with the SARE Order, on February 19, 2014 Eastern moved for relief from the automatic stay ("Eastern's Motion") [ECF No. 21] pursuant to 11 U.S.C. § 362(d)(3) and in connection therewith a hearing was held on March 19, 2014.

23. On March 5, 2014, PALFAM Equities, LLC ("Palfam") an alleged second position mortgagee on the Property filed its own motion for relief from the automatic stay.

24. On March 19, 2014, in connection with Eastern's Motion, the Court attempted to resolve Eastern's Motion by, *inter alia*, specifically directing (a) the Debtor to make payments to Eastern by a date certain, with monthly payments to follow and (b) Debtor's counsel to prepare a conditional order that was agreeable to Eastern which was consistent with the Court's ruling.

5

25.     In addition, the Court directed the Debtor to supply Eastern with a budget to be used in connection with a cash collateral agreement.   To date, the Debtor has failed to comply with each of the aforementioned directives given by the Court.

26.     Repeated requests to Debtor's counsel by Eastern for the conditional order and budget went ignored by the Debtor, as well as requests for the Debtor's cooperation with approving a conditional order prepared by Eastern to be approved by the Debtor and submitted to the Court.

27.     After the March 19, 2014 hearing, the Debtor failed to make any payments for property taxes during the 2014 year, and has failed to make a payment to Eastern since December 2014.

**United States Trustee's Motion to Dismiss or Convert**

28.     On July 3, 2014, the Office of the United States Trustee ("UST") moved this Court to dismiss or convert this case (the "UST's Motion"). In connection with the UST's Motion, a hearing was held on September 23, 2014.

29.     Although Palfam joined in the UST's Motion, however the UST's Motion similarly fails to indicate that it was either granted or denied in any regard.

**Debtor's Motion to Reclassify**

30.     On July 9, 2014, the Debtor filed its own application to reclassify Palfam's second mortgage claim as an unsecured obligation.   Although a hearing was held in connection therewith on September 23, 2014, upon information and belief, no evidentiary hearing or adjourned date has been scheduled by the parties as directed by the Court, and Eastern is aware of no explanation for this delay.

**The Debtor Obtains New Counsel**

31. On December 30, 2014, Penachio moved this Court to become relieved as counsel to the Debtor citing the Debtor's failure and/or refusal to communicate with counsel as the basis for the motion.

32. On February 23, 2015, this Court entered an Order authorizing Matera to act as counsel to the Debtor.

## THE APPLICATION

33. Eastern's instant Application, pursuant to Bankruptcy Rule 2004 seeks an Order of this Court, substantially in the form of the proposed order (the "Proposed Order") annexed hereto compelling the examination under oath of the Debtor and its tenants, including, without limitation, RTI and PTL and Quality and for the production of certain records and documents by the Debtor including (i) production of the documents specified in Eastern Savings Bank, fsb's Subpoena and First Demand for the Production of Documents and Information (a copy of which is annexed hereto as **Exhibit "C"**); (ii) directing the Debtor to appear for a deposition; (iii) and further directing any tenants at the Property, including, without limitation, the Tenants, to appear for depositions, should such depositions be needed.

34. Rule 2004 provides "[o]n motion of any party in interest the court may order the production of documents with regard to the liabilities and financial condition of the debtor or to any matter which may affect the administration of the debtor's estate . . . ." FED. R. BANKR. P. 2004; see *Martin v. Keybank of New York*, 208 B.R. 807, 810 (N.D.N.Y. 1997) (observing the "general rule that the scope of a Rule 2004 examination is very broad and great latitude of inquiry is ordinarily permitted" (citation omitted)); See *Simon v. FIA Card Services, N.A.*, 732 F.3d 259,

7

C.A.3 (N.J. 2013); See also *In re CENA's Fine Furniture, Inc.*, 109 B.R. 575, 577 n.2 (E.D.N.Y. 1990) ("The scope of a Rule 2004 examination is unfettered and broad . . . . Examinations under Rule 2004 are allowed for the purpose of discovering assets and unearthing frauds." (citation omitted)); See *In re Valley Forge Plaza Assoc.*, 109 B.R. 669, 674 (Bankr.E.D.Pa.1990) (noting that Rule 2004 examinations have "been likened to a . . . 'fishing expedition' into general matters and issues regarding the administration of the bankruptcy case" (citations omitted)).

35.     In this case, Eastern is seeking financial information from the Debtor and its Tenants for several reasons.   First, the Debtor's Petition and Schedules fails to indicate that the Debtor has placed any value for any of the Debtor's assets, while asserting that the Debtor possesses liabilities of $1,600,000.00.

36.     Furthermore, the Debtor's Petition indicates the value of the Debtor's Property is unknown[1] and the Debtor does not own any personal property at all.   Moreover, the Debtor fails to indicate that it has any unsecured obligations whatsoever, which is contradicted by the claims filed in the Court's Claims Register.

37.     In addition, pursuant to the Debtor's schedules, the Debtor believes that its obligation to Eastern is approximately $800,000.00.[2]

38.     With respect to the Debtor's income, the Debtor's monthly operating reports ("MOR's") indicate that the Debtor is receiving approximately $11,618.00 monthly from its tenants which does not appear to be enough money for the Debtor to cover its monthly obligations (which may not accurately be reflected on the Debtor's Cash Flow analyses) as included with its MOR's.

---

1 In connection with a motion brought by the Debtor, the Debtor identified the value of the Property to be $1,000,000.00.
2 Notably, on December 18, 2013 Eastern identified its claim against the Debtor's Property to be $1,547,969.64.

8

39. Curiously, the MOR's repeatedly indicate that in the event that the Debtor shall cover any shortfall of the Debtor each month. Notwithstanding, the Debtor has failed to tender any payments to Eastern since December 2014.

40. In addition, it is unclear whether and how much the Debtor's principals are being compensated. Accordingly, Eastern is entitled to obtain disclosure in the form of documents and testimony from the Debtor, and its Tenants, regarding the sources of the Debtor's income and expenses.

41. Similarly, and in light of the fact that there does not appear to be any contested matters between Eastern and the Debtor, Eastern should be afforded the opportunity to examine the Debtor with respect to its financial history, assets, liabilities, partnerships, third-party affiliations and corporate structure.

42. Accordingly, Eastern respectfully requests that this Court enter an Order directing the Debtor (and to the extent necessary, the Tenants at the Property) to produce records, documents and electronic files, which are more precisely set forth in the Proposed Order annexed to this Application and which are in the Debtor (and possibly the Debtor's Tenants) possession, custody or control.

43. Under the Proposed Order, responsive documents are to be turned over to counsel for Eastern by the date set forth in the subpoena issued in accordance with Federal Rule of Civil Procedure 45, made applicable by Bankruptcy Rules 9016 and 2004 (the "Subpoena"). The Subpoena shall provide the Debtor and the Tenants with not less than twenty (20) days for production of documents following service of the Subpoena.

44.     Eastern submits that the oral examination of an officer, director, equity holders, co-debtors, affiliate or such other person with authority and knowledge of the Debtor's financial affairs and transactions, under oath, is necessary in order to investigate the Debtor's pre and post-petition financial affairs.

45.     Examinations under Bankruptcy Rule 2004 include within their scope, *inter alia,* any matter that may relate to the property and assets of the estate; the financial condition of the debtor; any matter that may affect the administration of a debtor's estate; and, any matter relevant to the case or to the formation of a plan. *See,* Fed. R. Bankr. P. 2004(a), (c) and (d).

46.     The discovery sought by this Application goes directly to the acts, conduct and administration of the Debtor's estate including but not limited to the Debtor's income, expenses, partnerships, co-debtors and various third parties, including, without limitation, the Debtor's Tenants at the Property.

47.     Specifically, Eastern seeks information, *inter alia,* relating to the pre-petition financial history of the Debtor, as well as the post-petition ability of the Debtor, in connection with the Debtor's ability to fund any plan that would permit it to emerge from bankruptcy.

48.     Accordingly, the requested discovery is directly related to the "acts, conduct or property or to the liabilities of the Debtor's estate" and is appropriate under Bankruptcy Rule 2004.

49.     Lastly, Eastern respectfully requests permission to serve the annexed Proposed Order and Subpoenas accordance with Federal Rule of Civil Procedure 45, by First Class Mail upon the Debtor at its last known address as indicated on its Chapter 11 petition, its counsel and the Tenants be deemed good and proper service of such Proposed Order and Subpoenas.

## RESERVATION OF RIGHTS

50.     Eastern expressly reserves its right to amend or supplement this Motion, to introduce evidence supporting this Motion at the hearing on the Motion, and to file additional and supplemental objections as Eastern deems advisable.

## NOTICE

51.     Notice of this Motion has been provided to the Office of the United States Trustee, to the Debtor, to the Debtor's counsel, the Tenants at the Property, and those parties entitled to notice in this chapter 11 case. In light of the nature of the relief requested, Eastern respectfully submits that no other or further notices need be provided.

52.     No previous application for the relief sought herein has been filed before this Court in this case.

**WHEREFORE**, Eastern respectfully requests that this Court grant its Application in its entirety, enter an Order pursuant to Rules 2004 and 9016 of the Bankruptcy Rules, authorizing and directing the examination of the Debtor, and its Tenants, including without limitation, RTI and PTL and Quality, under oath, and the production and turnover of certain records and documents that are in the Debtor and/or the Tenants' possession, custody or control, and for such other and further relief as this Court deems just and proper.

Dated: March 24, 2015
      New York, New York

           KRISS & FEUERSTEIN LLP
           *Attorneys for Eastern Savings Bank, fsb.*

           *s/ Jason S. Leibowitz*
           Jerold C. Feuerstein, Esq. (JF9829)
           Jason S. Leibowitz, Esq. (JL6718)
           360 Lexington Avenue, Suite 1200
           New York, New York 10017
           (212) 661-2900 – telephone
           (212) 661-9397 – facsimile

To: